ROSENBERG v. JETT et al.

(Circuit Court, E. D. Arkansas, W. D. February 13, 1896.)

1. HOMESTEAD—OF WIFE DISTINCT FROM HUSBAND.
   During coverture, and while the husband and wife are living together, there can be no such thing as a separate homestead of the wife, distinct from that of the husband.

2. DEEDS—ALTERATION—EVIDENCE.
   In order to justify a finding that material words, essentially altering the effect of the instrument, have been introduced into a certificate of

acknowledgment of a deed after the execution of the deed and the signing of the certificate, the testimony that such alterations were so made should be quite convincing.

Rose, Hemminway & Rose, for plaintiff.
S. R. Cockrill, for defendant Mrs. Jett.
Ashly Cockrill, for minor defendants.

WILLIAMS, District Judge. This is a bill to foreclose a mortgage executed by E. D. Jett and Irene Jett, his wife, upon certain property in the city of Little Rock, to secure the payment of the sum of ——— dollars. After the execution of the mortgage, E. D. Jett departed this life, and this action is defended by Irene Jett, his widow, and ——— Jett, one of his heirs, a minor. It is contended in the answer of Irene Jett that the property in question was purchased partially with funds obtained by her from the estate of her parents, and partially by money made by her own efforts in the conduct of a business separate and apart from her husband, and that it was her homestead, and that she did not execute the mortgage in such a manner as to bind the property as her homestead. The minor, in his answer, claims that this property was the homestead of his father, and that the acknowledgment of the execution of the mortgage was not such as is contemplated by law, in order to bind the homestead and make it subject to the mortgage. The testimony on the part of Mrs. Jett attempts to show that this was her own homestead; that her husband, E. D. Jett, claimed to reside, during the last few years of his lifetime, near Washington, in the county of Hempstead; and that he claimed to be a citizen of that county, voted there at elections, and did not exercise the right of suffrage elsewhere, especially in the county of Pulaski, where this property is situated. But it also shows that the land he occupied there belonged to his wife.

I am clearly of the opinion that during coverture, and while the husband and wife are not separated, but are living together as husband and wife, there can be no such thing as a separate homestead of the wife, separate and apart from her husband; that the domicile of the husband is the domicile of the wife, and, wherever he may erect a homestead, it is, in the contemplation of the law, the homestead of the husband and wife. But it is unnecessary in this case to even pass upon that proposition or contention. The question as to a homestead is one of mixed law and fact, and the mortgagor, Jett, being dead, reference must be had to the testimony which shows his actions as to what his intentions were in regard to the homestead, and from that arrive at a conclusion as to the status of the property here, in relation to its being his homestead. From that testimony, and the application of the law to it, I am convinced that the property in controversy, from its purchase up to the time of the death of E. D. Jett, was unquestionably the homestead of said Jett, and that he could not reasonably and legally have claimed any other homestead. This being the case, the only matter in controversy is, did E. D. Jett and Irene Jett execute the mortgage in this case, and acknowledge it in the manner claimed by

the mortgagee, and as appears by the original mortgage exhibited with the depositions in this case?   In the acknowledgment in that mortgage the words "and homestead" are interlined.   They are necessary words, under the statute in this state, to be in the mortgage, in order to bind the homestead and make it subject to the mortgage.   The contention on the part of the defendants in this case is that the words "and homestead," and several other words that are not so material, were interlined after the execution of the mortgage and its acknowledgment.   It is attempted to show this by the testimony in this case, but it is denied strenuously by the plaintiff, and by the notary who took the acknowledgment of Jett, and who prepared the mortgage and the blank acknowledgment therefor.   He testifies that all the words were interlined before it was sent to the state of Kentucky for execution, and before it was signed by either Jett or Mrs. Irene Jett.   In view of the fact that the notary in this case must have known that if he added the material and most important words of the acknowledgment in it after its execution he was committing a most heinous crime, there ought to be testimony quite convincing that the words were interlined after execution before the court should so hold.   The testimony in this case does not convince me that the words were interlined after execution.   Mrs. Jett herself knew nothing about it.   The testimony of the officer who took the acknowledgment in the state of Kentucky, and of the son-in-law of Mrs. Jett, comes far short of being convincing in its nature.   Taking the testimony all together, I cannot find that the material words "and homestead" were interlined after execution, but am compelled to find that the mortgage was acknowledged by Jett and Irene Jett as is shown by the original mortgage exhibited in this case.   So, finding the decree in this case must be for the complainant, and a decree of foreclosure will be entered herein.